COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CYNTHIA DOMINGUEZ, | § | No. 08-14-00225-CR |
| Appellant, | § | Appeal from the |
| v. | § | 205th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120D04010) |
| | § | |

## **O P I N I O N**

Appellant Cynthia Dominguez appeals her conviction for intoxication manslaughter. In five issues, Appellant challenges the voluntariness of her guilty plea, contends the trial court abused its discretion by failing to informally inquire about Appellant's competency, to order a competency evaluation, and to hold a competency hearing, and additionally asserts the trial court erred when it submitted a punishment charge instruction to the jury regarding "good time." We affirm the trial court's judgment.

### FACTUAL BACKGROUND

After imbibing alcoholic drinks at a bar in El Paso, Texas on January 26, 2012, Appellant left in her vehicle and drove north in the southbound lanes on Airway Boulevard. This behavior was observed by two persons.

Kathleen Coleman, who was driving south in the southbound lanes of Airway Boulevard, saw a vehicle traveling head-on in her lane and moved to avoid a collision. Coleman observed the northbound driver veer right, across a raised median into the northbound lanes of traffic, creating sparks. Coleman looked in her mirror believing that the errant vehicle might flip or catch fire as it crossed the median back into the northbound lanes of travel.

Carlos Andrade was also traveling south in the southbound lanes of Airway Boulevard, accompanied by his six- and nine-year-old children. Andrade was driving his vehicle in the center southbound lane, and Army Sergeant Michael Paauwe was driving his motorcycle in the left southbound lane. Seeing northbound headlights approaching them directly and hearing a loud engine revving "higher than normal," Andrade took evasive action to the right to avoid being struck, but Appellant's car collided with Sgt. Paauwe's motorcycle.

Appellant's vehicle continued moving forward, catching fire. A bystander assisted in removing Appellant from her burning vehicle. As Appellant attempted to leave the scene, she stated, "They're going to take me away," and "I think I hit somebody."

Andrade pulled over, saw Sgt. Paauwe on the ground, and called 9-1-1. The impact of the collision split Sgt. Paauwe's motorcycle in two, lodging one half under Appellant's vehicle, and the other half approximately 25-30 feet away, near the area where Sgt. Paauwe was later found. Sgt. Paauwe died as a result of his multiple blunt force injuries.

Emergency personnel described Appellant as combative and belligerent, appearing as if she had been drinking or was drunk, and as struggling to get away. When an emergency medical technician asked Appellant about possible injuries she may have sustained, she responded, "Get the fuck away from me." When the emergency responder again attempted to check Appellant's

medical condition, he informed her that she had just killed someone, to which Appellant replied, "I don't give a fuck."

Appellant's blood tested positive for a tranquilizer, clonazepam, which is used for anxiety and may include side effects such as sleepiness, irritability, and if enough is consumed, loss of sense of reality. When clonazepam is combined with alcohol, side effects may include agitation as well as aggressive and bizarre behavior. A hospital test of Appellant's blood alcohol returned a result of .26, and a test performed at the Texas Department of Public Safety laboratory returned a result of .34.

**PROCEDURAL HISTORY**

Appellant was indicted for the offense of intoxication manslaughter. The indictment also alleged that Appellant used and exhibited a deadly weapon, a motor vehicle, during the commission of and immediate flight from the offense.

Appellant's initial retained counsel sought a continuance on the basis that, after previously indicating a desire to accept the State's plea bargain offer of eight years, Appellant wished to proceed to trial for which counsel needed additional time to prepare. At the hearing on the motion to continue, the State revoked its plea offer, and the trial court directly advised Appellant that it wanted her to understand the consequences of her actions, explaining that witnesses would be subpoenaed and a failure to cooperate with counsel could jeopardize her freedom. Appellant acknowledged the trial court's warnings by nodding and answering affirmatively when she was asked whether she understood that the trial court wanted the State and defense to have an opportunity to present their cases. As the hearing proceeded, Appellant informed the trial court that she had been unable to take Antabuse previously due to her pregnancy, and explained

3

additional matters to the trial court. The trial court granted the continuance, and when it directly advised Appellant that she would be proceeding to trial and that no other continuances would be granted, Appellant nodded in acknowledgement. No suggestion of incompetency was raised during or before this hearing.

On a subsequent date, the trial court heard defense counsel's motion to withdraw, and asked Appellant to explain her plans for securing new counsel if the motion was granted. Appellant informed the trial court that she intended to hire another attorney the following day, and when the trial court informed Appellant that her new counsel would be required to appear the following week and stated that it would not move the trial date nor permit additional delays, Appellant verbally acknowledged the court's comments. No suggestion of incompetency was made at or before this proceeding.

Appellant's new counsel, Victor Parra, appeared and on hearing new defense counsel's motion to continue the case, the trial court directly advised Appellant that no more changes, including change of counsel, would occur. Appellant verbally acknowledged this information as well as the trial court's statement regarding modification of some of the terms of bond. Appellant then answered the trial court's inquiries regarding the location of her residence, phone number, household occupants, and curfew, and acknowledged the trial court's driving-restriction admonishments. After the trial court informed Appellant of the new conditions of the amended bond, Appellant answered, "Yes, ma'am." No suggestion of incompetency was made to the trial court at or before this hearing. The trial court granted the motion and commented that trial would likely occur in July before another judge.

In April 2014, Appellant filed a motion for psychiatric examination by qualified personnel

4

to determine the extent of any mental disorder or disease and whether Appellant may be properly tried after a determination regarding her competency. During a status hearing before the judge who would be presiding over Appellant's trial, Appellant presented a motion for discovery, and additionally addressed the motion for psychiatric examination. Regarding Appellant's motion for psychiatric examination, the trial court asked whether counsel was retained. Counsel answered that he was retained, began to explain that Appellant had been making "very small" payments to him on a monthly basis, and noted that in his experience, psychiatrists charge between $2,000 to $3,500 for evaluations. When the trial court commented, "[T]his is not even requesting something dealing with her mental competency. This is a defensive matter[,]" defense counsel verbally agreed with the court. The trial court then instructed, "You'll have to bring me some authority . . . that the county should be paying for your defensive stuff on a privately retained case in a criminal matter[,]" and defense counsel said he would comply.

Appellant did not present any evidence or basis in support of the motion nor did she seek an opportunity to testify or present evidence in support of the motion. During the hearing on Appellant's motion to retest her blood, the trial court again indicated, "It's the same deal. You're paying for it. You've got to arrange the whole thing."

At a subsequent hearing later that month, Appellant again raised the issue of having an expert perform a psychological exam. The trial court swiftly denied the motion on the basis that the offense of intoxication manslaughter carries no mens rea element and commented that such testimony would not be admissible during the guilt-innocence phase of trial, but added that Appellant "[m]ight be able to bring it up maybe at punishment[.]" Defense counsel did not object to the trial court's ruling, did not present for the trial court's consideration any evidence, testimony

5

of Appellant or other witnesses, authority or argument in support of the motion, nor raised a contention that Appellant was not competent to stand trial. Rather, defense counsel responded, "That's fine, Your Honor." After considering and hearing testimony on other motions, the trial court reiterated that it had denied Appellant's motion for appointment of a psychiatrist in the absence of a mens rea requirement. In response, defense counsel stated that he understood the trial court's reasoning, and advised the trial court that he would revisit the issue with the trial court if he found a psychiatric expert to provide testimony.

Appellant did not raise any issue or present any evidence suggesting Appellant's competency to stand trial at a May 2014 hearing on expert fees or at a June 2014 pretrial hearing when both parties announced ready to proceed to trial on July 7, 2014. Four days prior to trial, the trial court was prepared to hear Appellant's motion to suppress, and both Appellant and defense counsel expressly waived the hearing on that motion. After the trial court addressed other pretrial matters, including jury selection proceedings and voir dire, defense counsel advised the trial court that Appellant would be contesting "the whole case," rather than pleading "guilty" to the jury. Defense counsel informed the trial court of several pretrial matters Appellant would possibly raise before trial, but none of them raised an issue regarding Appellant's competency to stand trial.

At trial, after completion of voir dire and in the jury's absence, defense counsel informed the trial court that a day earlier the State had offered Appellant a 12-year sentence and was now offering her a 10-year sentence at the commencement of trial. Noting that he had discussed with Appellant the State's offer, which Appellant had declined, defense counsel desired to make a record of her decision regarding the offer.

Appellant testified that she understood the State's offer of a 10-year sentence, and

6

acknowledged that defense counsel had explained to her at length the State's offer along with the benefits of the offer and the risks of potentially receiving a longer sentence. Appellant agreed that she had indicated repeatedly to defense counsel that she wanted the State to re-instate its initial offer of an 8-year sentence, which she would be willing to accept, but declared she was unwilling to accept the State's offer of a 10-year sentence. When the trial court inquired of the State whether a 9-year sentence was a possibility, the State declared the 10-year sentence was the only plea offer available.

Thereafter, the trial court instructed the jury, and the State read the indictment. When the trial court asked Appellant for her plea, she announced, "Guilty." The trial court removed the jury, noting "Well, it would have been helpful to the Court if we would have known this was going to happen a little sooner." Defense counsel explained that Appellant previously had changed her mind on occasion, before he had been retained, and he had not wanted to make representations to the trial court. The trial court then explained to Appellant that because she had pleaded guilty, different procedures would be implemented. This colloquy followed:

> THE COURT: And so, Ms. Dominguez, you understand that if you plead "guilty" and you persist in pleading "guilty," that I'm going to have to instruct the jury to find you guilty? Do you understand that?
>
> THE DEFENDANT: Yes, I do understand.
>
> THE COURT: And you understand that the range of punishment in this offense is confinement in prison for not less than two years or more than 20 years and a fine not to exceed $10,000?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And when I instruct this jury to find you guilty, I'm going to also have to instruct them to sentence you. And they can sentence you anywhere within that range of punishment. Do you understand that?

7

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, basically, that changes the whole way this trial will proceed because, at this point in time, if you persist in doing that, I'm going to then allow the State to put on evidence to prove that you actually did commit the crime; and then when I send them out to deliberate, I'm going to send them out with an instruction that will say, basically, that you have pled "guilty," that I've admonished you, that despite my admonishments you're persisting in wanting to enter a plea of "guilty," . . . and, therefore, I'm instructing them to find you guilty and to come back and at the same time and to determine the sentence. So they're just going to go out one time, they're going to determine the sentence, and that will be it. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you've explained all this to her. Is that correct, Mr. Parra?

[DEFENSE COUNSEL]: Yes, I have, Your Honor.

THE COURT: And even though you've explained it to her and I've explained it to her, it's your opinion that she is persisting and wants to continue in this mode. Is that correct?

[DEFENSE COUNSEL]: That is correct, Your Honor.

THE COURT: All right. And so, with all that understanding, I don't know that I have to give – I'd like to give some additional instructions to the jury to tell them that at this stage that she's entering a plea of "guilty;" that I'm going to be instructing them to find her guilty; I'm going to allow the State to put on some evidence so they know actually what the circumstances of the offense were; and then they'll be going out to make those determinations.

Defense counsel voiced no objection to the trial court's inquiries, admonishments, or lack thereof. During opening statement, defense counsel informed the jury that Appellant would testify that she did not remember anything after consuming a "second shot," and that Appellant would present evidence of her remorse, her acknowledgment and recognition of the impact of her actions on Sgt. Paauwe's children and wife, and of her reformation. After the State presented its evidence, Appellant presented seven character witnesses, each of whom either promoted the

8

concept of "second chances" or urged the imposition of a minimum or probated sentence.

Appellant testified thereafter and admitted that she had taken clonazepam which had been prescribed for anxiety, and had consumed a cocktail, spinach dip, and as offered by other patrons at the bar, three shots of tequila. She did not remember leaving the bar, getting into her car, having the accident, or being pulled from her burning vehicle. Appellant testified that she was ashamed and embarrassed when she viewed the police video made after the accident. She lamented her actions and their consequences, described her children, work, and family life, stated that she had been attending Alcoholics Anonymous and church, and expressed remorse to Sgt. Paauwe's family. After the State presented rebuttal evidence that Appellant also had been drinking before she arrived at the bar on Airway Boulevard, defense counsel argued in closing that Appellant had accepted responsibility by admitting her guilt, and as her defense witnesses had also urged, promoted the imposition of a probated sentence while reminding the jurors that they had indicated their ability to consider a two-year probated sentence.

Prior to instructing the jury regarding the trial court's charge, Appellant lodged an objection to language in the proposed charge indicating possible eligibility for parole and credit for good conduct, and alternatively asked that if the language was retained that the charge include language regarding consequences of violating probation. The trial court overruled the objection and request. When the State noted that Appellant could address this during argument, defense co-counsel nodded up and down. The jury declined to suspend Appellant's driver's license, and assessed Appellant's punishment at 12-years' confinement with no fine.

## DISCUSSION

### I. Voluntary and Knowing Plea

9

In Issue One, Appellant asserts the trial court erred when it failed to ensure Appellant's guilty plea before a jury was knowingly and voluntarily entered. Appellant specifically complains that the record does not reflect her plea was freely and voluntarily entered because the trial court did not ask Appellant whether she was pleading guilty because she was guilty and for no other reason, nor inquired as to her competence. We first address the knowing and voluntary entry of Appellant's plea, and will address competency-related matters in Issues Two through Four.

Texas cases differentiate appellate claims based on due process, whereby an appellant asserts his or her plea was involuntary because it was inadequately informed, and those based on a violation of the statutory admonishment requirements of article 26.13. TEX. CODE CRIM. PROC. ANN. art. 26.13 (West Supp. 2016); *Davison v. State*, 405 S.W.3d 682, 691 (Tex.Crim.App. 2013). When pleading guilty, a defendant relinquishes his rights to a jury trial and to confront the witnesses against him under the Sixth Amendment, and his privilege against self-incrimination under the Fifth Amendment. U.S. CONST. AMEND V, VI; *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Gardner v. State*, 164 S.W.3d 393, 399 (Tex.Crim.App. 2005), *citing Boykin v. Alabama*, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 1712, 23 L.Ed 2d 274 (1969). To be constitutionally valid, a defendant's plea of guilty must be made with "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed 2d 274 (1969); *Davison*, 405 S.W.3d at 686 (defendant must have actual awareness of nature and gravity of charges against him and privileges being relinquished to render guilty plea constitutionally valid). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90

10

S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *Davison*, 405 S.W.3d at 686.

The record must affirmatively disclose that the defendant "entered his plea understandingly and voluntarily." *Brady*, 397 U.S. at 747 n.4, 90 S.Ct. at 1468. From a silent record, courts may not presume a waiver of important constitutional rights. *Boykin*, 395 U.S. at 243-44, 89 S.Ct. at 1712-13. The Texas Court of Criminal Appeals has recognized that in *Boykin*, the Supreme Court did not specify what must be spread on the record to satisfy the *Boykin* mandate, that is that the record affirmatively disclose that a defendant understandingly and voluntarily entered his guilty plea. *Gardner*, 164 S.W.3d at 399, *quoting Aguirre-Mata v. State*, 125 S.W.3d 473, 475 (Tex.Crim.App. 2003).

To be voluntary, a plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006), *citing Brady*, 397 U.S. at 755, 90 S.Ct. at 1472. We review the voluntariness of a plea in light of the totality of the circumstances. *See Griffin v. State*, 703 S.W.2d 193, 196 (Tex.Crim.App. 1986). A defendant's knowledge of his constitutional rights and the voluntariness of his plea may be inferred from the record, including statements made by counsel in the defendant's presence. *See Gardner*, 164 S.W.3d at 399.

Constitutional error revealed by the record is reviewed for harm under Rule 44.2(a), which requires that, so long as "the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Davison*, 405 S.W.3d at 691.

Appellant asserts the record does not show that Appellant's guilty plea was made freely

and voluntarily, and notes that she was never informed that as a result of entering her guilty plea she was relinquishing her constitutional rights to remain silent, to confront her "accusers," and to have a jury decide her guilt or innocence. She also complains that she was not asked whether she was pleading guilty because she was guilty and for no other reason.

Unlike the record in *Boykin*, the record before us is neither silent nor reveals constitutional error resulting in harm. Rather, the record shows that Appellant was aware of the State's pretrial plea bargain offers, and informed the trial court that defense counsel had explained to her at length the State's plea offer along with the benefits of the offer and the risks of potentially receiving a longer sentence. After Appellant pleaded guilty, the trial court informed her that if she persisted in pleading guilty, it would be required to instruct the jury to find her guilty, and her trial would consist of a unitary punishment trial. Appellant informed the trial court that she understood these matters.

In his opening statement, Appellant's defense counsel stated, "Let me begin by saying that my client has decided to plead 'guilty,'" and declared that Appellant had taken responsibility for her actions. Defense counsel informed the jury that it would be cross-examining the State's witnesses, and explained why he would be doing so.

In closing summation, defense counsel noted, "In this case, Mrs. Dominguez, as you saw, . . . stood up and accepted responsibility. She entered her plea of 'guilty.'" Defense counsel then addressed the probation components of the court's charge, and informed the jury how to enter on the court's charge the number of years to which Appellant would be sentenced if she violated any probation given. He explained to the jury, "At no time did she tell me, 'Victor, I do not want to accept responsibility[,]'" and declared that Appellant "stands by her decision that she is guilty of

this offense." Counsel continued to emphasize that Appellant's actions were unintentional, noted that the minimum sentence for the offense is probation for a two-year period, and reminded the jury that they had agreed that they could consider that minimum sentence. Observing that when someone really desires to change, the acceptance of responsibility is the first step, counsel observed that the first thing Appellant had done was to state, "I am guilty," and again promoted the imposition of a probated sentence. Defense counsel also reiterated for the jury the reasons why he had cross-examined witnesses despite the fact that Appellant had pleaded guilty.

Appellant opted to plead guilty after declining the State's plea bargain offers, was admonished regarding the range of punishment, and through her testimony sought to demonstrate acceptance of the responsibility for and the consequences of her act, remorse, and redemption of her behaviors through attendance at her church and Alcoholics Anonymous meetings. From this we may reasonably infer that Appellant voluntarily waived her right to a jury trial regarding guilt or innocence. Although it may be argued that in pleading guilty Appellant waived her right to confront witnesses against her, in fact, defense counsel cross-examined most of the witnesses who were called to testify against her during the unitary punishment phase of trial. From this we may also infer that Appellant did not waive her right to confront the witnesses against her.

Appellant pleaded guilty to the jury, and the trial court was not required to admonish Appellant regarding her right against self-incrimination, but the record shows that Appellant knowingly and voluntarily waived that right. *See Williams v. State*, 674 S.W.2d 315, 320 (Tex.Crim.App. 1984). That Appellant's plea of guilty was freely and voluntarily entered may also be inferred from the record which repeatedly shows that Appellant entered her guilty plea as part of a strategy to persuade the jury to grant her a probated sentence. *See Gardner*, 164 S.W.3d

13

at 399.  It is evident from this record that Appellant's waivers of these constitutional rights were voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.  *Brady*, 397 U.S. at 748, 90 S.Ct. at 1469; *Davison*, 405 S.W.3d at 686.  We therefore conclude, as a matter of federal constitutional law, the record adequately shows that Appellant freely, knowingly, and voluntarily pleaded guilty.

*Article 26.13*

Although Appellant does not directly complain that the trial court failed to admonish her but rather complains directly of the voluntary and knowing entry of her plea, Appellant's argument tangentially refers to article 26.13(b), and for that reason we address its application here. Statutory admonishment claims may be raised under article 26.13(b) of the Texas Code of Criminal Procedure, which provides that a trial court shall not accept a plea of guilty unless it appears that the defendant is mentally competent and the plea is free and voluntary.  TEX. CODE CRIM. PROC. ANN. art. 26.13(b)(West Supp. 2016).

The purpose of article 26.13 is to assure that a defendant does not plead guilty except with a full understanding of the charges against him and the consequences of his plea.  *Basham v. State*, 608 S.W.2d 677, 678 (Tex.Crim.App. 1980).  Article 26.13(c) provides that a trial court's substantial compliance in admonishing a defendant under article 26.13 is sufficient in the absence of a showing that the defendant was not aware of the consequences of his plea and that he was misled or harmed by the court's admonishment.  *Richards v. State*, 562 S.W.2d 456, 458 (Tex.Crim.App. 1977)(opinion on reh'g).  When an appellant raises an article 26.13 statutory admonishment claim, harm is analyzed under Rule 44.2(b), which mandates that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  TEX.

14

R. App. P. 44.2(b); *Davison*, 405 S.W.3d at 691.

We observe that Appellant voiced no objection at trial regarding the trial court's admonishments or lack thereof, nor filed a motion for new trial. On appeal, Appellant does not suggest that she was misled by the trial court or was not fully aware of the consequences of her plea, nor does she argue that she did not enter her plea knowingly and voluntarily. Instead she complains that such facts are not shown in the record.

To constitute substantial compliance with article 26.13, the trial court need not make an express inquiry as to whether a defendant is freely and voluntarily entering a plea of guilty. *Basham*, 608 S.W.2d at 678-79; *Richards*, 562 S.W.2d at 458. Because Appellant entered an open plea of guilty for the offense of intoxication manslaughter with a motor vehicle as a deadly weapon, the provisions of article 26.13 applicable in this case include subsection (a)(1), requiring the trial court to admonish Appellant regarding the range of punishment for the offense, and subsection (a)(4), requiring the trial court to admonish Appellant that if she is not a United States citizen, her plea may result in deportation, exclusion from admission to the United States, or the denial of naturalization under federal law. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1), (4) (West Supp. 2016); *see Richards*, 562 S.W.2d at 458 n.1 (open guilty plea entered in jury's presence obviated requirement that trial court admonish defendant regarding plea-bargain related matters).

In compliance with article 26.13(a)(1), the trial court admonished Appellant regarding the range of punishment in compliance with article 26.13(a)(1). The trial court did not provide the article 26.13(a)(4) admonishment regarding non-U.S. citizenship, deportation, and naturalization consequences to Appellant, who testified during punishment that she was born in Midland, Texas.

15

The trial court's failure to admonish Appellant pursuant to article 26.13(a)(4) was therefore harmless error which we must disregard. TEX. R. APP. P. 44.2(b).

From this record, we conclude the trial court substantially complied with the applicable requirements of article 26.13. For this reason, and because Appellant has failed to show that she was misled or harmed by the trial court's admonishments, Appellant has failed to show article 26.13 error necessitating reversal. *See Richards*, 562 S.W.2d at 458.

## II. Competency Issues

In Issue One, Appellant also complains that a "competency motion" was filed but "her competency [was] never explored" to ensure that her guilty plea was freely, voluntarily, knowingly, and competently entered. In Issues Two, Three, and Four respectively, Appellant asserts the trial court abused its discretion because it failed to make an informal inquiry regarding Appellant's competency, order a competency evaluation, and hold a competency hearing.

*Competency to Stand Trial*

A criminal trial of an incompetent defendant violates due process. *See Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996); *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992); *Turner v. State*, 422 S.W.3d 676, 688 (Tex.Crim.App. 2013). In Texas, a person is incompetent to stand trial if she does not have sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings against the person. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1)-(2)(West 2006).

A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proven incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC.

16

ANN. art. 46B.003(b)(West 2006).  Any person may suggest by motion that the defendant may be incompetent to stand trial, and such motion may be supported by affidavits setting out the facts on which the suggestion is made.  *Id*. art. 46B.004(a)(West Supp. 2016).

On suggestion that the defendant may be incompetent to stand trial, the trial court must conduct an informal inquiry to determine whether there is some evidence from any source that would support a finding the the defendant may be incompetent to stand trial.  *Id*. art. 46B.004(c)(West Supp. 2016).  A suggestion of a defendant's incompetency to stand trial is a threshold requirement for the initiation of an informal inquiry and may consist solely of a credible source's representation that the defendant may be incompetent.  *Id*. art. 46B.004(c-1)(West Supp. 2016).  No further evidentiary showing is required, nor is the trial court required to have a bona fide doubt regarding a defendant's competency.  *Id.*

Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of these factors described in article 46B.024 or on any other indication that the defendant is incompetent within the meaning of 46B.003.  TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1), 46B.024 (West Supp. 2016).  The factors set out in article 46B.024 include but are not limited to the capacity of the defendant during criminal proceedings to rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings, to disclose to counsel pertinent facts, events, and states of mind, to engage in a reasoned choice of legal strategies and options, to understand the adversarial nature of criminal proceedings, to exhibit appropriate courtroom behavior, and to testify.  *Id*. art. 46B.024(1)(A)-(F)(West Supp. 2016).

The Court of Criminal Appeals has explained, "If the trial judge finds that there is a

17

suggestion of incompetency, he or she shall conduct an informal inquiry to determine if 'there is some evidence from any source' that would support a finding that the defendant is incompetent to stand trial." *Druery v. State*, 412 S.W.3d 523, 538 (Tex.Crim.App. 2013), *citing Ex parte LaHood,* 401 S.W.3d 45, 52–53 (Tex.Crim.App. 2013). "[S]ome evidence" of incompetency to stand trial is a quantum of evidence that is "more than none or a scintilla, that rationally may lead to a conclusion of incompetence." *Druery*, 412 S.W.3d at 538, *citing Ex parte LaHood,* 401 S.W.3d at 52–53.

Because the informal hearing is not the appropriate venue for determining the merits of the claim, the trial court should not weigh competing evidence of incompetency in conducting its informal inquiry. *Druery*, 412 S.W.3d at 538. Instead, the purpose of the informal inquiry is intended to determine whether the issue of incompetency to stand trial is sufficiently raised to merit a formal hearing. *See Ex parte LaHood,* 401 S.W.3d at 52–53 & n.5, *citing Sisco v. State,* 599 S.W.2d 607, 613 (Tex.Crim.App. [Panel Op.] 1980). On determining the existence of "some evidence" of incompetency to stand trial, and subject to certain exceptions, the trial court shall order an examination and must hold a trial "before determining whether the defendant is incompetent to stand trial on the merits." TEX. CODE CRIM. PROC. ANN. art. 46B.005(a), (b)(West 2006). At that hearing, the defendant must prove his incompetence by a preponderance of the evidence. *Id*. art. 46B.003(b); *Druery*, 412 S.W.3d at 538, *citing Morris v. State,* 301 S.W.3d 281, 287 (Tex.Crim.App. 2009).

*Analysis*

In her motion for psychiatric examination, Appellant asserted that she was indigent and without funds to be examined by a qualified psychiatrist or psychologist. The motion also

asserted that defense counsel had reason to believe that Appellant was "afflicted with some form of mental disorder, disease or defect that may well have destroyed [Appellant's] ability to perceive the wrongfulness of her conduct or her capacity to conform her conduct to the requirements of the law she allegedly violated." The motion declared that defense counsel was not qualified to estimate the extent of any mental disorder affecting Appellant and was unable to judge her present capacity to stand trial. It further alleged that in the absence of a complete psychiatric exam, Appellant would be denied due process and the defense and trier of fact would be deprived of satisfactory evidence to decide the issue of Appellant's present competency.

Aside from the trial court's proper observation that defense counsel was retained, thus refuting the motion's assertion of Appellant's indigence, nothing in the motion or in the record suggests or would support a suggestion to the trial court that Appellant was not competent to stand trial. When the trial court inquired about the motion, defense counsel agreed with the trial court's assertion that the motion did not request "something dealing with [Appellant's] mental competency" but was instead "a defensive matter." Defense counsel informed the trial court that he would comply with the court's directive to present authority for providing psychiatric examination of Appellant at the County's expense when Appellant had retained defense counsel in her criminal case, and apparently presented some case law during a subsequent hearing. At that hearing, the trial court did not address competency but instead denied the motion for a psychiatric examination because the charged offense does not contain a mens rea element. In response, defense counsel announced that he understood the trial court's reasoning and stated that if he found an expert to testify, he would "revisit that with the Court."

Moreover, no evidence, either in the form of testimony or affidavit based on observations

19

made in relation to one or more of these factors described in article 46B.024, suggested the need for an informal inquiry, nor was there any indication that the Appellant was incompetent to stand trial within the meaning of 46B.003. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1), 46B.024 (West Supp. 2016). No evidence was brought forth suggesting that Appellant lacked the capacities to rationally understand the charges against her or the potential consequences of the pending criminal proceedings, to disclose to counsel pertinent facts, events, and states of mind, to engage in a reasoned choice of legal strategies and options, to understand the adversarial nature of criminal proceedings, to exhibit appropriate courtroom behavior, or to testify. TEX. CODE CRIM. PROC. ANN. art. 46B.024(1)(A)-(F)(West Supp. 2016). Instead, the record shows that Appellant understood the charges against her as well as the potential consequences of the proceedings. She informed the trial court that she understood the charges against her, and clearly contemplated the potential consequences of pleading guilty and proceeding to trial. Thereafter, Appellant's clear and responsive testimony demonstrated her capacity to testify and her ability to exhibit appropriate courtroom behavior, and she expressly agreed with defense counsel that she wanted to take responsibility for her actions and have the jury determine the appropriate consequence for those actions by imposing the sentence that it determined to be proper. This, too, demonstrated Appellant's ability to engage in a reasoned choice of legal strategies and options. There was no suggestion nor any evidence that Appellant lacked the capacity to disclose to defense counsel pertinent facts, events, and states of mind.

On this record, we are unable to conclude that the threshold requirement of a suggestion of Appellant's incompetency to stand trial was presented to the trial court, and for this reason, the trial court did not err in failing to conduct an informal inquiry under article 46B.004(c). TEX.

20

CODE CRIM. PROC. ANN. art 46B.004(c-1).   Moreover, because the trial court was not required to make an informal inquiry regarding Appellant's competency to stand trial, we are unable to conclude that it abused its discretion in failing to order a competency evaluation or hold a competency hearing.   Issues One, Two, Three, and Four are overruled.

### III.   Jury Instruction Error

In Issue Five, Appellant contends the trial court erred by submitting a "good time" instruction in the punishment portion of the court's charge to the jury.   Defense counsel lodged an objection to the inclusion of the following instruction in the court's charge:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, by earn time off the period of incarceration imposed through the award of good conduct time.   Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation.   If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.   It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in these cases, if the defendant is sentenced to a term of imprisonment, she will not become eligible for parole until the actual time served equals one half of the sentence imposed without consideration of any good conduct time the defendant may earn. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if she is sentenced to a term of imprisonment because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time; however, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.   You are not to consider the manner in which the parole law may be applied to this particular defendant.   *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2016).

On appeal Appellant contends the charge instruction was given in error because the deadly-

21

weapon finding rendered Appellant ineligible for good conduct time and the instruction misled the jury by indicating Appellant would receive "good time." [1]   TEX. GOV'T CODE ANN. § 508.145(d)(1)(West 2012).   However, the trial court's instruction to the jury significantly, if not identically, tracks the language set out in article 37.07, section 4(a) of the Code of Criminal Procedure, the inclusion of which the Legislature has mandated if a judgment contains an affirmative deadly weapon finding as here.   TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2016).   As the Court of Criminal Appeals has observed:

> The practical import of the trial court's instruction to the jury is that "If an inmate behaves well, he will likely get out of prison sooner than if he misbehaves. However, no one can predict when he will actually get out, except that it will not be until he has served at least one-half his sentence or thirty years."   This is the message that the Legislature intended to convey in section 4(a), and this is, under any fair reading of the instruction, the message that it did convey.   That is a legally accurate message.

*Luquis v. State*, 72 S.W.3d 355, 364–65 (Tex.Crim.App. 2002).   Consequently, the trial court did not commit error by giving the mandated instruction.   *See id.* at 363.

Although not couched in terms of constitutional error, Appellant's complaint that the instruction misled the jury in light of her ineligibility for good conduct time hints at a constitutional inquiry which the Court of Criminal Appeals addressed directly in *Luquis*.   In that case, the Court expressly considered whether "a statute which informs the jury of the existence of good conduct time, briefly describes that concept, and explicitly tells the jury not to apply that concept to the particular defendant, violate[s] due process if the defendant's eligibility for parole or release on mandatory supervision will not be affected by good conduct time[.]"   The Court concluded that it

---

[1] Appellant asserts the instruction was inaccurate, and mislead and confused the jury as shown by a juror's request for clarification.   The jury requested clarification on suspended sentences and fines, and the trial court twice provided instruction on those matters.   The jury did not inquire about "good conduct time" as set out in the complained-of instruction.

22

does not. *Luquis*, 72 S.W.3d at 365.

Here, the statutory language which the trial court included in its charge informed the jury that it was not permitted to consider the extent to which good conduct time may be awarded to or forfeited by Appellant nor the manner by which parole law may be applied to her. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). We assume the jury followed the trial court's charge instructions, and we will not find constitutional error "unless we conclude that a reasonable jury probably was actually confused by this charge." *Luquis*, 72 S.W.3d at 366–67.

There is no showing that the jury was confused or failed to follow the trial court's instructions regarding the "good conduct time" instruction. Appellant has not demonstrated the existence of a reasonable likelihood that the jury in this case misapplied the good-conduct time instruction, and as a result assessed a higher sentence in violation of due process or due course of law. *See Luquis*, 72 S.W.3d at 367; *see also Garcia v. State*, 911 S.W.2d 866, 868-69 (Tex.App.– El Paso 1995, no pet.)(overruling contention that charge instruction's references to good time were misleading and denied appellant due process), *citing Muhammad v. State*, 830 S.W.2d 953, 954- 956 (Tex.Crim.App. 1992)(parole law instruction tracking article 37.07, section 4(a) language gives jury accurate information in instruction on law applicable to case, is not evidentiary, correctly instructs jury not to speculate on what parole authorities may do, and does not violate federal due process); *see also Donoho v. State*, 39 S.W.3d 324, 332 (Tex.App.–Fort Worth 2001, pet. ref'd), *citing Cagle v. State*, 23 S.W.3d 590, 593–94 (Tex.App.–Fort Worth 2000, pet. ref'd)(op. on reh'g)(inclusion of mandatory article 37.07, section 4(a) charge instruction regarding existence and mechanics of parole law and good conduct time in case where defendant not eligible for good time was not error). Because the trial court's inclusion of the mandatory article 37.07,

23

section 4(a) instruction in its charge to the jury was not error, Issue Five is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


                                    YVONNE T. RODRIGUEZ, Justice

November 8, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Publish)

24