

# NUMBER 13-22-00334-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MICHAEL PETER NIGHTINGALE,**                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                **Appellee.**

---

### On appeal from the 249th District Court
### of Johnson County, Texas.

---

# MEMORANDUM OPINION[1]

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Chief Justice Contreras

On June 6, 2019, a grand jury indicted appellant Michael Peter Nightingale on one

count of continuous sexual abuse of a young child (Count One) and six counts of "sexual

---

[1] This case was transferred from the Tenth Court of Appeals in Waco to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

assault of a child prohibited from marrying" (Counts Two–Seven), all first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.02(b), 22.011(a)(2), (f)(1)(A). Before trial, the State abandoned Counts Three and Seven and deleted the "prohibited from marrying" language from the indictment in Counts Two, Four, Five, and Six (the Assault Counts), reducing those counts to second-degree felonies. *See id.* § 22.011(f). Appellant waived his right to a jury trial, pleaded guilty to the Assault Counts, and pleaded not guilty to Count One. Following a bench trial, the trial court found appellant guilty on all counts and sentenced him to forty years' confinement on Count One and twenty years' confinement on each of the Assault Counts. The trial court ordered the five sentences to run concurrently.

By seven issues, which we address as three, appellant argues on appeal that: (1) there is legally insufficient evidence to support his conviction on each count; (2) his guilty pleas to the Assault Counts were involuntary; and (3) his sentence was cruel and unusual in violation of the Eighth Amendment to the United States Constitution. We affirm.

## I.   BACKGROUND

The bench trial commenced on June 14, 2022. Mother testified that she is appellant's wife, and the couple share four children, including Nancy, born in December 1999, and Nora, born in 2002.[2] In 2012, Mother and appellant moved with their children from Washington state to Keene, Texas, where they lived for four years. In 2016, the family moved to Glen Rose, Texas.

Mother testified that on March 11, 2019, Nancy told her that appellant had been

---

[2] We use aliases, as the State did throughout trial, to protect the children's identities. *See* TEX. R. APP. P. 9.8 cmt.

2

sexually abusing her since she was twelve years old. Nancy informed her the abuse continued until about three months before that night, when she was nineteen years old. Mother contacted law enforcement the same day.

Mother and all four children were subsequently interviewed at the Paluxy River Children's Advocacy Center. After the interviews, Somervell County Sheriff's Office Investigator Terry Early determined there was probable cause that appellant had committed criminal offenses, obtained an arrest warrant for appellant, and scheduled Nancy for an examination with a sexual assault nurse examiner (SANE).

Kelly Bunch conducted Nancy's SANE exam and recited the details from her report at trial. According to Bunch, Nancy informed Bunch that she was sexually assaulted by appellant from 2012 through 2019. Bunch also testified that Nancy said appellant had instructed her not to say anything about the abuse and implicitly threatened her by reminding her that "he was bigger than [her]." Nancy checked the "yes" options on the SANE forms that specified that the abuse included: hand and penile contact with her genitals; "oral copulation of [her] genitals"; "masturbation and contact, of patient by assailant" and "of assailant by patient"; condom use; fondling of her breasts; and exposure to pornography.

Nancy testified that she moved with her family to Texas in 2012 when she was twelve years old and that appellant's abuse "started very slowly" that same year.[3] At first, appellant would tuck Nancy into bed and cuddle with her. As time progressed, however, "it all became more frequent." When asked what she meant by "it," Nancy answered, "[M]y

---

[3] Nancy recalled later in her testimony that one of the first instances of abuse occurred in Virginia when she was ten years old, during which appellant directed her to perform oral sex on him.

father coming into my room and cuddling me. I'd wake up to him sticking his hands down my pants." Nancy detailed that appellant would "try to stimulate the clitoris as well as stick his finger in [her] vagina." Appellant also "grabbed [her] hand and told [her] to put it on his genitals, and . . . then put his hand over [her] hand and was trying to show [her] what [she] needed to do." According to Nancy, appellant directed her to "grip [his genitals] firmer and was trying to . . . force [her] but show [her] how to stroke [his genitals]." Nancy testified that this occurred when she was twelve years old. In total, Nancy estimated that appellant had touched her genitals over one hundred times while her family lived in Keene.

Around Christmas 2012, when Nancy was thirteen years old, the abuse progressed to penile to vaginal penetration. Nancy testified that appellant engaged in sexual intercourse with her at least once a week and about fifty times when she was thirteen. At one point when Nancy was thirteen, appellant "took [Nancy] into the bathroom and . . . set [her] up on the counter and said he wanted to try something new." Appellant then "got on his knees and had placed his mouth to [Nancy's] vagina." Appellant also would place his hands under Nancy's shirt and "would try to stimulate [her] nipples." Appellant would buy Nancy whatever she wanted. Nancy posited, "Basically, [appellant] would bribe me to keep my mouth shut."

Nancy testified that she and her family moved from Keene to Glen Rose in 2016. In Glen Rose, appellant would show his daughter pornography and would sexually assault her on almost a daily basis, even while Nora, with whom Nancy shared a room and bunk bed, slept nearby. Nancy testified that at points she worried she was pregnant, so she

4

would roughhouse with her brothers and have them punch her stomach and would also harm herself. Appellant would occasionally give Nancy a morning-after pill or use contraceptive gel while sexually assaulting her.

Nancy testified that the final time she was sexually assaulted was in February 2019. Nancy refused appellant's instructions to cuddle with him, so he jumped off the couch, pulled her into the nearby bathroom, and "very aggressively pinned [her] down and stuck his penis in [her]."

Nora testified that she shared a bunk bed with Nancy and would sometimes hear appellant with Nancy:

> I would be sleeping at night, and I, like, I acted like I was asleep because I didn't want them to know I was awake. [Appellant] would step on my bed to get up into the top bunk, and I would feel shaking[,] and I would hear heavy breathing, and then I would hear crying and a whisper of "No, no, please go. I don't want this, no."

Nora testified it was Nancy saying "no." Nora stated that she too was sexually assaulted by her father before she turned seventeen on "probably more than ten" occasions during which appellant touched her breasts and "pubic region."

Appellant took the stand in his own defense. He acknowledged that he "did some terrible things to [Nancy]" which were "unforgivable." Appellant stated that he pleaded guilty to the Assault Counts in part to bring about family healing and reconciliation. Appellant admitted to performing acts of digital and penile to vaginal penetration on Nancy in 2014, 2015, 2016, and 2018, and performing oral sex on Nancy in 2018—when Nancy was between the ages of fifteen and nineteen years old. Appellant denied digitally penetrating Nancy prior to then, stating only that he accidentally touched her vagina when she was fourteen. Appellant also disagreed with the timeline of the assaults Nancy

5

described. Appellant stated that although he had sexual intercourse with Nancy about twenty-five times, the first incident occurred when she was eighteen years old. When asked if Nancy's testimony was thus a lie when she stated she was under fourteen when he first had sex with her, appellant answered, "That is nuts. Yeah—first time was when she was [eighteen]." Finally, appellant corroborated Nora's testimony that he would climb into bed to have sex with Nancy while Nora slept on the bottom bunk, and that he also sexually assaulted Nora, but only once.

The parties rested, and the trial court found appellant guilty as charged and sentenced appellant as described above. On July 12, 2022, appellant filed a motion for new trial. In his motion, appellant argued, in part, that (1) his sentence was disproportionate to the crime committed and thus violated his Eighth Amendment rights, and (2) his pleas of guilty had been "involuntary in that [he] was confused and did not understand at the time of the plea that he was pleading guilty to the criminal acts alleged in" the Assault Counts. The trial court held a hearing on appellant's motion on August 25, 2022. At the hearing, appellant sought to withdraw his guilty pleas on the grounds that he was confused as to what he was pleading guilty to because he "was emotionally distraught." At the end of the hearing, the trial court denied appellant's motion for new trial. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Appellant contends that there was legally insufficient evidence to convict him on each count alleged in the indictment.

6

**A.      Standard of Review & Applicable Law**

"In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing Tex. Code Crim. Proc. Ann. art. 38.04).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

7

A hypothetically correct jury charge would instruct the jury that a person commits the offense of continuous sexual abuse of a young child if:

(1)     during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)     at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A)     a child younger than 14 years of age[.]

TEX. PENAL CODE ANN. § 21.02(b). An "act of sexual abuse" includes sexual assault. *See*

*id.* § 21.02(c)(3). A hypothetically correct jury charge would instruct the jury that a person

commits the offense of sexual assault of a child if:

regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly:

(A)     causes the penetration of the anus or sexual organ of a child by any means;

(B)     causes the penetration of the mouth of a child by the sexual organ of the actor;

(C)     causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(D)     causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(E)     causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

*Id.* § 22.011(a)(2). For purposes of the sexual assault statute, a "child" is a person

younger than seventeen years of age. *Id.* § 22.011(c)(1). A child sexual abuse victim's

testimony alone can support a conviction for that abuse. *Gonzalez v. State*, 522 S.W.3d

48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing TEX. CODE CRIM. PROC. ANN.

8

art. 38.07). And "[i]t is a longstanding rule that the State is not required to prove that an offense was committed on the date alleged in the indictment . . . but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations." *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (citing *Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008)).

## B.     Analysis

### 1.     Count One: Continuous Sexual Abuse of a Child

The indictment alleged in part that "from on or about January 1, 2012, through on or about December 29, 2013, when [appellant] was 17 years of age or older, [appellant] commit[ted] two or more acts of sexual abuse against a child younger than 14 years of age." Appellant contends that the evidence was legally insufficient to prove that Nancy was under fourteen years old when he assaulted her and, alternatively, that "a fatal variance in the indictment language and the trial evidence" renders the evidence insufficient to support a conviction.

As to her age, Nancy testified that she was born in December 1999. She stated that the abuse started in the summer of 2012, when she was twelve years old, when appellant "cuddled" with her, placed his hands on her vagina, and placed her hands on his genitals. Nancy also testified that beginning around Christmas of 2012, just after she turned thirteen years old, appellant began engaging in sexual intercourse with her on a weekly basis—or about fifty times in the year 2013. Nancy added that in 2013, appellant placed her on the bathroom sink counter and performed oral sex on her. Mother and Bunch both testified that Nancy informed them she was consistently abused by appellant

9

from 2012 through 2019. Although appellant testified that he only began abusing his daughter after she turned fourteen, the trial court was free to disregard his testimony, and the evidence was otherwise sufficient to prove continuous sexual abuse of a child beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 21.02(b); *Delagarza*, 635 S.W.3d at 723; *Gonzalez*, 522 S.W.3d at 57.

Appellant also asserts that a fatal variance exists in the indictment because Nancy testified that appellant forced her to perform oral sex on him in Virginia in 2010 when she was ten, but the indictment alleges that the abuse started on or about January 1, 2012. "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* That is not what happened in this case. Here, the State alleged that appellant sexually assaulted Nancy on two or more occasions between January 2012 and December 2013. As noted, sufficient evidence exists in the record to prove the State's allegation. That Nancy also testified to an earlier instance of abuse in another state is of no consequence, as the State did not use that alleged assault to prove its case.[4] In any event, even if the 2010 instance of abuse were relevant to the State's case, the State was not required to prove the abuse started on the exact dates listed in the indictment—only that the offense was committed before the indictment, on a date before Nancy turned

---

[4] In fact, as appellant notes in his brief, the Texas Court of Criminal Appeals has held that an out-of-state offense cannot support a conviction for continuous sexual abuse of a child. *See Lee v. State*, 537 S.W.3d 924, 925 (Tex. Crim. App. 2017).

fourteen, and that the abuse continued for a period of thirty or more days. *See Martin*, 335 S.W.3d at 873. It did so here, so we overrule appellant's sufficiency challenge regarding his continuous sexual abuse conviction.

### 2. The Assault Counts: Sexual Assault of a Child Younger Than Seventeen Years Old

The Assault Counts in the indictment alleged that appellant: (1) on or about January 1, 2014, intentionally or knowingly caused Nancy's sexual organ to touch his sexual organ; (2) on or about January 1, 2015, intentionally or knowingly caused Nancy's sexual organ to touch his sexual organ; (3) on or about January 1, 2015, intentionally or knowingly caused Nancy's sexual organ to touch his mouth; and (4) on or about January 1, 2016, intentionally or knowingly caused Nancy's sexual organ to touch his sexual organ. As to each count, appellant again contends that the evidence was legally insufficient to prove the offense occurred at all, or alternatively, that it occurred on the dates alleged in the indictment. The State notes that appellant pleaded guilty and judicially confessed to the Assault Counts by acknowledging the charges against him were true and correct and contends that, in any case, the evidence is sufficient to prove the offenses.

We agree with the State. The Texas Code of Criminal Procedure states that, when an accused pleads guilty to a non-capital felony charge,

> it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same.

TEX. CODE CRIM. PROC. ANN. art. 1.15. Evidence is considered sufficient under article 1.15

11

when "it embraces every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Moreover, article 1.15 evidence may take "many forms," including: (1) a defendant's consent to an oral or written stipulation of what the evidence against him would be, without necessarily admitting to its veracity of accuracy; or (2) a defendant testifying under oath in open court, specifically admitting his culpability or, at minimum, generally acknowledging that the allegations against him are true and correct. *See id.*

Sufficient evidence exists in the record to support appellant's convictions on the Assault Counts. Once again, Nancy testified that she was continuously sexually abused from 2012 through 2019, during which appellant would have sexual intercourse with her and perform oral sex on her. *See* TEX. PENAL CODE ANN. § 21.011(a)(2). Bunch also testified that Nancy informed her that she was abused from 2012 through 2019. Nancy checked the "yes" options on the SANE forms that conveyed the abuse she faced included hand and penile contact with her genitals, "oral copulation of the genitals, to the patient by the assailant," "masturbation and contact, of patient by assailant" and "of assailant by patient," condom use, fondling of her breasts, and exposure to pornography. *See id.* Nora added that she heard appellant crawl into bed with Nancy to sexually abuse her. And while he disputed the date it started, appellant admitted at trial that he performed the acts alleged in the Assault Counts. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) (noting that the factfinder "may accept one version of the facts and reject another, and it may reject any part of a witness's testimony"). This evidence suffices to prove the offenses alleged beyond a reasonable doubt. *See* TEX. PENAL CODE ANN.

12

§ 21.011(a)(2); *Delagarza*, 635 S.W.3d at 723; *Gonzalez*, 522 S.W.3d at 57; *Martin*, 335 S.W.3d at 873.

Legally sufficient evidence exists in the record to support each of appellant's five convictions. We thus overrule appellant's first five issues on appeal.

### III. VOLUNTARINESS OF PLEA

By his sixth issue, appellant contends that his guilty pleas to the Assault Counts were involuntary because "he did not fully understand the direct consequences of his plea and he was not admonished by the court as to the requirement to register as a sex offender if convicted."

### A. Standard of Review & Applicable Law

"No plea of guilty . . . shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." TEX. CODE CRIM. PROC. ANN. art. 26.13(b). "The purpose of [article 26.13(b)] is to assure that the defendant does not plead guilty except with a full understanding of the charges against him and the consequences of his plea." *Basham v. State*, 608 S.W.2d 677, 678 (Tex. Crim. App. [Panel Op.] 1980); *see Dominguez v. State*, 535 S.W.3d 125, 135 (Tex. App.—El Paso 2017, no pet.). We employ a totality of the circumstances test to determine the voluntariness of a guilty plea. *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986); *see Thomas v. State*, 615 S.W.3d 552, 568 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "A defendant's sworn

13

representation that his guilty plea is voluntary constitutes a formidable barrier in any subsequent collateral proceedings." *Id.* (cleaned up); *see Thomas*, 615 S.W.3d at 569 ("A defendant who attests that []he understands the nature of h[is] plea and that h[is] plea was voluntary carries a 'heavy burden' on appeal to show that h[is] plea was involuntary."). To hurdle that barrier, "the defendant must affirmatively show that []he was not aware of the consequences of h[is] plea and that []he was misled or harmed by the trial court's erroneous admonishment." *Thomas*, 615 S.W.3d at 569 (citing TEX. CODE CRIM. PROC. ANN. art. 26.13(c)).

> Prior to accepting a plea of guilty . . . , the court shall admonish the defendant of:
>
> (1)     the range of the punishment attached to the offense;
>
> (2)     the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court . . . ;
>
>  . . . . [and]
>
> (5)     the fact that the defendant will be required to meet the registration requirements of Chapter 62, if the defendant is convicted of or placed on deferred adjudication for an offense for which a person is subject to registration under that chapter.

TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1), (2), (5). "The failure of the court to comply with Subsection (a)(5) is not a ground for the defendant to set aside the conviction, sentence, or plea." *Id.* art. 26.13(h).

**B.     Analysis**

At his arraignment hearing on November 1, 2019, appellant's attorney noted that he reviewed the indictment with appellant and appellant "does understand what he's charged with and would waive reading of the indictment and enter a plea of not guilty to

14

each count in the indictment." On June 9, 2022, the trial court held a hearing on appellant's "motion for continuance and motion to reduce bond." At the hearing, appellant's trial counsel questioned appellant as follows:

[Trial Counsel]: [Appellant], you and I have had a chance, not only today, but several times over the last couple of years to go over what you're charged with in the indictment, correct?

[Appellant]: Yes.

[Trial Counsel]: And you understand what you're charged with? You don't agree with the charge, but you understand what the charge is?

[Appellant]: I don't agree with it.

[Trial Counsel]: Right. But you—my question is, you understand what the charges are?

[Appellant]: As far as I know, yes.

[Trial Counsel]: Okay. I've read to you your daughters' witness statements. We've gone over the offense reports, and so you understand what the allegations are?

[Appellant]: Yes.

[Trial Counsel]: Okay. And you understand that as you're indicted on Count One of continuous sexual abuse of a young child, the range of punishment on that if you get convicted is not less than 25 years and not more than 99—or up to 99 or life. You understand that that is the range of punishment, correct?

. . . .

[Appellant]: Yes.

[Trial Counsel]: And that Counts 2 through 7 are all first-degree felonies, which carry a range of a minimum of 5 years and also up to 99 years or life?

. . . .

15

| [Appellant]: | Yes. |

See *Kniatt*, 206 S.W.3d at 664; *Thomas*, 615 S.W.3d at 569.

On June 13, 2022, at a pretrial hearing, the State informed the trial court that it was abandoning two counts in the indictment and striking language from the Assault Counts, thereby reducing the Assault Counts from first- to second-degree felonies. Appellant initially expressed some confusion about the consequences of the State's amendments. Ultimately, however, the following colloquy took place:

| [Trial Court]: | . . . We're going to zero in on this first [count]. Okay. The punishment range for Continuous Sexual Abuse of a Child, okay, Under the Age of 14 is not less than 25. |
| [Appellant]: | Okay. Yes, Your Honor. |
| [Trial Court]: | And not more than life confinement. |
| [Appellant]: | Yes, Your Honor. |
| | . . . . |
| [Trial Court]: | What . . . does [appellant] wish to plead to Count Two? |
| [Appellant]: | We're still discussing. |
| [Trial Court]: | It's my understanding you're going to plead not guilty to all the counts. |
| [Appellant]: | No, your Honor. I am going to plead guilty to some of the counts. |

Later in the hearing, the trial court asked appellant whether he understood that "the range of punishment on [the Assault Counts] is 2 to 20." Appellant answered affirmatively.

Furthermore, on the day of trial, the State read the indictment count by count. After the State read Count One, the trial court asked appellant how he pleaded, and appellant pleaded not guilty. After the State read each of the remaining Assault Counts, the trial

16

court once again asked appellant how he pleaded, and appellant pleaded guilty. The trial court asked appellant if he understood that he did not "have to plead guilty to [the Assault Counts], and no one is going to make [him] do that?" And appellant answered affirmatively. *See Kniatt*, 206 S.W.3d at 664; *Thomas*, 615 S.W.3d at 569. Finally, when he took the stand at trial, appellant acknowledged that he pleaded guilty to the "terrible things" alleged in the Assault Counts and that he declined to contest those charges in an effort to begin the familial healing process. Later, at the hearing on appellant's motion for new trial, appellant stated that he was confused about the dates alleged in the indictment but did not elaborate on the source or nature of that confusion other than to note that he had been "emotionally distraught."

Far from "affirmatively show[ing] that []he was not aware of the consequences of h[is] plea," *see Thomas*, 615 S.W.3d at 569, the record reveals no evidence that appellant's pleas were involuntary. *See Griffin*, 703 S.W.2d at 196; *Thomas*, 615 S.W.3d at 568. At multiple pretrial hearings and at trial, appellant acknowledged his understanding of the charges against him and the punishment ranges for a conviction on those charges. And the amendments to the indictment could not have feasibly generated confusion so significant as to affect the voluntariness of appellant's pleas. We thus overrule appellant's sixth issue to the extent he argues that he "did not fully understand the direct consequences of his plea."

We also disagree that appellant's pleas of guilty to the Assault Counts were involuntary given the trial court's undisputed failure to admonish appellant, under article 26.13(a)(5) of the code of criminal procedure, that he would have to register as a sex

17

offender if convicted. Article 26.13 explicitly states that "[t]he failure of the court to comply with Subsection (a)(5) is not a ground for the defendant to set aside the conviction, sentence, or plea." TEX. CODE. CRIM. PROC. ANN. art. 26.13(h); *see James v. State*, 258 S.W.3d 315, 317 (Tex. App.—Austin 2008, pet. ref'd, untimely filed). We thus overrule the remaining aspect of appellant's sixth issue.

## IV.     DISPROPORTIONATE SENTENCING

By his seventh and final issue, appellant argues that he received grossly disproportionate sentences in violation of the Eighth Amendment to the United States Constitution.

## A.     Standard of Review & Applicable Law

We review a court's sentencing determination for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Generally, if a sentence is assessed within the legislatively determined range, it will not be found unconstitutional. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (noting that "the sentencer's discretion to impose any punishment within the prescribed range [is] essentially 'unfettered'"); *Foster v. State*, 525 S.W.3d 898, 912 (Tex. App.—Dallas 2017, pet. ref'd). The punishment range for continuous sexual abuse of a young child is "imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 21.02(h). The punishment range for a second-degree felony is "imprisonment . . . for any term of not more than 20 years or less than 2 years." *Id.* § 12.33.

But a narrow exception to the general rule exists: "an individual's sentence may

constitute cruel and unusual punishment, despite falling within the statutory range, if it is grossly disproportionate to the offense." *Alvarez v. State*, 525 S.W.3d 890, 892 (Tex. App.—Eastland 2017, pet. ref'd) (citing *Solem v. Helm*, 463 U.S. 277, 287 (1983)). An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Outside the capital punishment context, however, a successful challenge to proportionality of a particular sentence is "exceedingly rare." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

To determine whether a sentence "is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Id.* at 323. "In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.*

**B.    Analysis**

Appellant did not receive capital punishment here, and each of his sentences fell

within the prescribed punishment ranges—continuous sexual abuse of a minor is a first-degree felony for which he received forty years' confinement, and sexual assault of a minor is a second-degree felony for which he received twenty years' confinement on each count. *See* TEX. PENAL CODE ANN. §§ 12.33, 21.02(h); *Ex parte Chavez*, 213 S.W.3d at 323–24. In arguing that this Court should nonetheless find his sentences illegal, appellant asserts that: (1) "[t]he sentences are grossly disproportionate to the harm caused to the victim"; (2) he "is not eligible for parole and will be 87 years old before he is eligible for release; and (3) by comparison, "California's version of [c]ontinuous [s]exual abuse of a young child is punishable by 6, 12[,] or 16 years in California state prison."

Appellant contends that forty years' confinement is a disproportionate sentence to the harm caused by his abuse. But the evidence established that appellant habitually sexually abused his minor daughter Nancy over an approximately seven-year span. Nancy described appellant's abuse in detail and stated she would sometimes harm herself to avoid becoming pregnant. Appellant also sexually abused his other minor daughter Nora and admitted to sexually assaulting both of his daughters.

This Court other courts have upheld similar or greater sentences for continuous sexual abuse of a young child. *See Cisneros v. State*, 622 S.W.3d 511, 522–23 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.) (op. on remand) (concluding in a case with similar facts that two consecutive ninety-nine-year sentences for continuous sexual abuse of children was not a grossly disproportionate punishment); *see also Devenport v. State*, No. 14-20-00292-CR, 2021 WL 1972440, at *1 (Tex. App.—Houston [14th Dist.] May 18, 2021, no pet.) (mem. op., not designated for publication) (concluding life sentence for one

count of continuous sexual abuse of a child did not violate appellant's Eight Amendment rights); *Prine v. State*, No. 12-17-00241-CR, 2018 WL 1736796, at *1 (Tex. App.—Tyler Apr. 11, 2018, no pet.) (mem. op., not designated for publication) (concluding the same regarding a ninety-nine-year sentence). Here, the State requested that the trial court sentence appellant to life imprisonment and cumulate each of his five sentences. Instead of what would amount to a potential maximum sentence of life plus eighty years' imprisonment, the trial court sentenced appellant to forty years' confinement. We conclude that appellant's sentences are not grossly disproportionate to his crimes and thus do not violate his Eighth Amendment rights. *See* U.S. CONST. amend. VIII; *Simpson*, 488 S.W.3d at 323.

We overrule appellant's seventh issue.

### V.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
4th day of May, 2023.

21